UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MANAL M. IBRAHIM, *et al.*, | |
| Plaintiffs, | Civil Action No. 19-610 (BAH) |
| v. | Chief Judge Beryl A. Howell |
| U.S. DEPARTMENT OF STATE, *et al.*, | |
| Defendants. | |

**MEMORANDUM OPINION**

Plaintiffs Manal M. Ibrahim, who is a U.S. citizen, and her parents, Mohammad A.A. Zaben and Khitam S.M. Zaben ("Mr. and Ms. Zaben" or "the Zabens"), who are residents of the Israeli territories, initiated this case, on March 5, 2019, seeking to compel the defendants—the U.S. Department of State, the U.S. Consulate General in Jerusalem ("Consulate"), and various federal officials in their official capacities—"to immediately and forthwith take all appropriate action to issue a decision on the Immigrant Visa applications of the [Zabens]." Compl. for Issuance of Writ of Mandamus ("Compl.") ¶ 1, ECF No. 1.[1] During the year-long pendency of this lawsuit, the defendants have, with the plaintiffs' consent, requested and received extensions of time for the defendants to respond to the plaintiffs' claims, as the defendants anticipated that the Zabens' visa applications would soon be adjudicated, rendering this case moot. *See, e.g.*, Defs.' Consent Mot. for Extension of Time to File Defs.' Resp. to Pls.' Compl. ("Defs.' May Extension Request") ¶¶ 3–4, ECF No. 8. Now, pending before the Court is the defendants'

---

[1] Some federal officials named in the complaint have been succeeded in office since the complaint was filed and are automatically replaced by their successor officials. *See* FED. R. CIV. P. 25(d). In addition, the day before the plaintiffs filed suit, "[o]n March 4, 2019, U.S. Consulate General Jerusalem . . . merge[d] into U.S. Embassy Jerusalem to form a single diplomatic mission," Statement, Robert Palladino, Deputy Spokesperson, U.S. Embassy in Isr., Merger of U.S. Embassy Jerusalem and U.S. Consulate General Jerusalem (Mar. 3, 2019), https://il.usembassy.gov/merger-of-u-s-embassy-jerusalem-and-u-s-consulate-general-jerusalem/, which merger has no effect on the parties' dispute.

1

motion to dismiss the complaint for lack of subject matter jurisdiction, under Federal Rule of Civil Procedure 12(b)(1), because, in defendants' view, decisions on the Zabens' visa applications have been made. *See* Defs.' Mot. Dismiss ("Defs.' Mot.") at 1, ECF No. 15. Specifically, after the complaint was filed, "a consular officer of the United States refused plaintiff Mohammed A. A. Zaben's immigrant visa application on May 3, 2019 and . . . plaintiff Khitam S. M. Zaben's immigrant visa application remains refused as of February 3, 2020." Defs.' Mem. Supp. Defs.' Mot. ("Defs.' Mem.") at 1 (citation omitted), ECF No. 15.[2]

Although Mr. Zaben's immigrant visa application has been denied, the defendants mischaracterize the legal significance of the so-called "refusal" of Ms. Zaben's application. For the reasons set forth below, the defendants' motion to dismiss is granted in part and denied in part.

## I.  BACKGROUND

As noted, Ibrahim is a United States citizen and the daughter of Mr. and Ms. Zaben, who are residents of the Israeli territories. Compl. ¶¶ 1–2. In July 2012, Ibrahim submitted Form I-130 petitions to the United States Citizenship and Immigration Services ("USCIS"), seeking immigrant visas on behalf of Mr. and Ms. Zaben. *Id.* ¶ 2. USCIS approved the I-130 petitions in 2013, and then forwarded the petitions to the Consulate for further processing. *Id.* ¶ 18.

On June 12, 2014, Mr. and Ms. Zaben were interviewed at the Consulate. *Id.* After the interviews, "[a] consular officer refused the [Zabens'] immigrant visa application[s] under [Immigration and Nationality Act ("INA")] §221(g)." Decl. of Chloe Dybdahl, Attorney Adviser, Advisory Opinions Division of the U.S. Department of State's Bureau of Consular

---

[2]  Alternatively, the defendants move for summary judgment, *see* Defs.' Mem. at 3 ("[A]lthough the Court may consider materials outside the pleadings to resolve a Rule 12(b)(1) motion, in an abundance of caution defendants move in the alternative for summary judgment because this motion relies on materials outside the pleadings."), but the pending motion may be resolved under Rule 12(b)(1).

2

Affairs ("Dybdahl Decl.") ¶¶ 4, 7, ECF No. 15-2. The consular officer requested, however, that the Zabens "provide additional information" necessary to evaluate their applications, *id.*, and indicated that their applications were placed in "administrative processing," Compl. ¶ 2.

For the next five years, the Zabens remained stuck in this state of limbo. Over a year after their interview at the Consulate, on September 17, 2015, the Zabens were told that their "pending" applications continued to require "administrative processing," and that when the processing was complete, "a consular officer [would] review the case again to determine if the case is documentarily complete and to verify that none of the documents are expired." Pls.' Ex. B at 1, ECF No. 16-3. Approximately four and a half months later, on February 1, 2016, the Consulate sent an email to the Zabens' attorney stating that "[a]s soon as all administrative work is completed for Mr. and Mrs. Zaben's cases, we will notify you so that your clients can renew the necessary documents and prepare their cases for issuance." Pls.' Ex. C at 1, ECF No. 16-4. Two subsequent communications from the Consulate reiterated this information to the Zabens. *See* Pls.' Ex. D at 1, ECF No. 16-5 (April 5, 2016 email); Pls.' Ex. E at 1, ECF No. 16-6 (June 15, 2016 email).

Over nine months after sending the February 1, 2016 email, on November 17, 2016, the Consulate sent another email, again stating that the Zabens' applications were being processed, and this time further explaining that "[a]dministrative processing refers to various additional steps that must be taken before a visa can be issued." Pls.' Ex. F at 1, ECF No. 16-7. Then, after more than a year and a half had passed, on September 20, 2018, the United States Embassy Jerusalem ("Embassy") sent an email promising to "do all we can to see that the visa is adjudicated as soon as the processing of [the] application is complete," Pls.' Ex. G at 1, ECF No. 16-8, a promise reiterated approximately two months later in a November 30, 2018 letter

from the Embassy, Pls.' Ex. H at 1, ECF No. 16-9.  Two additional communications from the Embassy over the following three months further confirmed that the Zabens' applications remained in "administrative processing."  *See* Pls.' Ex. I at 1, ECF No. 16-10 (December 6, 2018 email); Pls.' Ex. J at 2, ECF No. 16-11 (February 15, 2019 letter).

In May 2019, after the plaintiffs filed their complaint, the defendants, for the very first time, treated Mr. and Ms. Zaben's separate visa applications differently from one another.  On May 3, 2019, Mr. Zaben's visa application was denied, pursuant to § 212(a)(3)(B) of the INA.  Dybdahl Decl. ¶ 7.  Ms. Zaben, however, was asked "to provide additional documents and information for her visa application."  Defs.' May Extension Request ¶ 3.  On July 25, 2019, Ms. Zaben appeared for a second visa-application interview, at the end of which "a consular officer again refused her application because [Ms. Zaben] did not bring certain documents with her."  Defs.' Consent Mot. for Extension of Time to File Defs.' Resp. to Pls.' Compl. ¶ 2, ECF No. 10.  Yet, rather than close Ms. Zaben's case, the defendants continued to request and receive documents from Ms. Zaben over the following months.  *See, e.g.*, Pls.' Ex. Q at 1, ECF No. 16-18 (noting that, on January 17, 2020, "the consulate called Ms. Zaben . . . to request additional documents").

In a letter sent via email on January 31, 2020, the Embassy told Ms. Zaben that her "visa application [was] refused" pursuant to § 221(g) of the INA, Pls.' Ex. R at 3, ECF No. 16-19, a different statutory basis than that given for the May 3, 2019 denial of Mr. Zaben's visa application, but the same statutory basis as that cited for the June 12, 2014 "refusals" of both Zabens' applications.  Again, Ms. Zaben's case was not closed.  Instead, later the same day, the Embassy sent a follow-up email stating that "[a]t the moment, [Ms. Zaben's] case is still undergoing administrative processing to verify the applicant's qualifications for the visa."  *Id.* at

4

1. On February 18, 2020, Ibrahim checked the status of Ms. Zaben's application using the Department of State Consular Electronic Application Center ("DSCEAC") website. Decl. of Manal M. Ibrahim ("Ibrahim Decl.") ¶ 14, ECF No. 16-2. The website reported that Ms. Zaben's "visa case is currently undergoing necessary processing." Pls.' Ex. S at 1, ECF No. 16-20.

Over the past eight years, as Ms. Zaben has waited to find out whether her visa application will be approved, the life she seeks to lead near her daughter and other children in the United States has passed her by. The plaintiffs claim that this delay "has had a devastating effect on [Ms. Zaben]." Ibrahim Decl. ¶ 16. Most notably, Ms. Zaben has missed the births of her five grandchildren. *Id.*; *see also, e.g.*, Pls.' Ex. B at 1 ("[M]e [and] my wife have been patiently waiting we are expecting a grandchild this month that we would love to visit . . . ."); Pls.' Ex. U at 1, ECF No. 16-22 ("Khitam Zaben Asker is expecting the arrival of her grand-daughter within the next few weeks, and will need entry into the United States.").

The plaintiffs claim that the defendants' failure to issue decisions on the Zabens' visa applications in the nearly eight years since the applications were first filed and nearly six years since the Zabens were initially interviewed at the Consulate violates the INA, the Administrative Procedure Act, and applicable federal regulations. Compl. ¶¶ 25, 31–32. They therefore seek "a writ of mandamus directing the Consulate to render a decision either granting or denying Mr. and Ms. Zaben's Immigrant Visa applications pursuant to 22 C.F.R. § 42.81(a)." *Id*. ¶ 30.

As noted, the defendants initially obtained, with the plaintiffs' consent, a series of extensions of time to respond to the complaint. *See, e.g.*, Defs.' May Extension Request. On February 7, 2020, before the expiration of the most recently granted extension, the defendants moved to dismiss this action, which motion is now ripe for resolution, with consideration of the

5

supplemental authority submitted by the plaintiffs on March 20, 2020. *See* Pls.' Notice Suppl. Auth., ECF No. 18.

## II.     LEGAL STANDARD

"Federal courts are courts of limited jurisdiction," *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (internal quotation marks omitted) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)), and "have only the power that is authorized by Article III of the Constitution and the statutes enacted by Congress pursuant thereto," *Johnson v. Comm'n on Presidential Debates*, 869 F.3d 976, 980 (D.C. Cir. 2017) (internal quotation mark omitted) (quoting *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986)). To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1), the plaintiff thus "bears the burden of invoking the court's subject matter jurisdiction." *Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015).

When a jurisdictional skirmish "present[s] a dispute over the factual basis of the court's subject matter jurisdiction," "the court must go beyond the pleadings and resolve" any dispute necessary to the disposition of the motion to dismiss. *Feldman v. FDIC*, 879 F.3d 347, 351 (D.C. Cir. 2018) (alteration in original) (internal quotation mark omitted) (quoting *Phoenix Consulting v. Republic of Angl.*, 216 F.3d 36, 40 (D.C. Cir. 2000)). The court must accept as true "factual allegations in the complaint and 'construe the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged.'" *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quoting *Thomas v. Principi*, 394 F.3d 970, 972 (D.C. Cir. 2005)). In addition, however, the "court may properly consider . . . evidentiary material in the record," again affording the plaintiff "the benefit of all reasonable inferences." *Feldman*, 879 F.3d at 351; *see also Am. Freedom Law Ctr. v. Obama*, 821 F.3d 44, 49 (D.C. Cir.

2016) ("[W]e 'may consider materials outside the pleadings in deciding whether to grant a motion to dismiss for lack of jurisdiction.'" (quoting *Jerome Stevens Pharm., Inc. v. FDA*, 402 F.3d 1249, 1253 (D.C. Cir. 2005))).

## III.     DISCUSSION

The defendants argue that the Zabens' visa applications have been adjudicated and thus the doctrine of consular nonreviewability deprives the Court of subject matter jurisdiction to resolve the plaintiffs' claims. Defs.' Mem. at 1. Indeed, the law is well settled that the INA grants "consular officers exclusive authority to review applications for visas," *Saavedra Bruno v. Albright*, 197 F.3d 1153, 1156 (D.C. Cir. 1999) (citing 8 U.S.C. §§ 1104(a), 1201(a)), and "[i]n view of the political nature of visa determinations and of the lack of any statute expressly authorizing judicial review of consular officers' actions, courts have applied what has become known as the doctrine of consular nonreviewability" to visa-application decisions, *id.* at 1159. "The doctrine holds that a consular official's decision to issue or withhold a visa is not subject to judicial review, at least unless Congress says otherwise." *Id.*; *see also Castaneda-Gonzalez v. Immigration & Naturalization Serv.*, 564 F.2d 417, 428 n.25 (D.C. Cir. 1977) (observing that "a consular officer [can] make . . . a decision [to deny a visa] without fear of reversal since visa decisions are nonreviewable").

This doctrine applies differently to each of the Zabens. The defendants report that Mr. Zaben's application was refused on May 3, 2019, Dybdahl Decl. ¶ 7, and the plaintiffs never attempt to dispute this claim, *see generally* Pls.' Mem. Opp'n Defs.' Mot. ("Pls.' Opp'n"), ECF No. 16. The defendants are therefore entitled to dismissal of the plaintiffs' claims as they pertain to Mr. Zaben's application. As to Ms. Zaben's application, however, the defendants' argument falls short. Despite the defendants' claims to the contrary, no final decision regarding Ms.

7

Zaben's application has been rendered. Further, the defendants argue that the plaintiffs have improperly attempted to amend their complaint through their memorandum in opposition, *see* Defs.' Reply Supp. Defs.' Mot. ("Defs.' Reply") at 1, ECF No. 17, but in fact the plaintiffs' opposition memorandum and the complaint present the same theory: that Ms. Zaben's application has not been adjudicated because it remains in "administrative processing." These arguments for dismissal of the plaintiffs' claims as they pertain to Ms. Zaben's application are addressed *seriatim*.

### A. The Doctrine Of Consular Nonreviewability Does Not Apply With Respect To Ms. Zaben's Application

The defendants' primary argument is that the doctrine of consular nonreviewability applies to bar judicial review of Ms. Zaben's claims. *See* Defs.' Mem. at 3–4; Defs. Reply at 3–5. Yet, the doctrine of consular nonreviewability does not bar all possible suits pertaining to a consular officer's consideration of a visa application. "When the Government simply declines to provide a decision in the manner provided by Congress, it is not exercising its prerogative to grant or deny applications but failing to act at all." *Nine Iraqi Allies Under Serious Threat Because of their Faithful Serv. to the U.S. v. Kerry*, 168 F. Supp. 3d 268, 290–91 (D.D.C. 2016). Accordingly, "while the doctrine of consular nonreviewability precludes review of final visa application *decisions*, it does not insulate a delay in reaching those decisions from judicial review." *Vulupala v. Barr*, No. 19-cv-378 (ABJ), 2020 WL 601887, at *6 (D.D.C. Feb. 7, 2020) (emphasis in original); *see also, e.g.*, *Patel v. Reno*, 134 F.3d 929, 931–32 (9th Cir. 1998) ("Normally a consular official's discretionary decision to grant or deny a visa petition is not subject to judicial review. However, when the suit challenges the authority of the consul to take or fail to take an action as opposed to a decision taken within the consul's discretion, jurisdiction exists." (citations omitted)); *Nine Iraqi Allies*, 168 F. Supp. 3d at 290 ("[T]he doctrine of

8

consular nonreviewability is not triggered until a consular officer has made a *decision* with respect to a particular visa application." (emphasis in original)); *P.K. v. Tillerson*, 302 F. Supp. 3d 1, 11 (D.D.C. 2017) (same).

The defendants maintain that they have issued a decision with respect to Ms. Zaben's application. As support, the defendants assert that "on June 12, 2014" after Ms. Zaben's first interview at the Consulate, "the consular officer refused the immigrant visa application under INA §221(g)," and, as of February 3, 2020, "the immigrant visa application of Ms. Zaben remains refused under INA §221(g)." Dybdahl Decl. ¶¶ 4–5. As such, the defendants argue that the doctrine of consular nonreviewability applies here. Defs.' Mem. at 3–4. The plaintiffs, however, contend that on June 12, 2014, Ms. Zaben's application was "not . . . refused *with finality*," and, "[t]o the contrary, it remains *pending*, subject to 'administrative processing.'" Pls.' Opp'n at 1 (emphases in original). Thus, "the question to be determined is whether the agency has already rendered a final decision that would trigger the doctrine." *Vulupala*, 2020 WL 601887, at *3. The plaintiffs have the better argument here.

Decisions of both this Court and other courts have consistently recognized that "where the application is still undergoing administrative processing, even where a refusal has been relayed, the decision is not final," and thus "claims alleging unreasonable delay while a case remains suspended in 'administrative processing' are not barred by the doctrine of consular nonreviewability." *Ghadami v. U.S. Dep't of Homeland Sec.*, No. 19-cv-00397 (ABJ), 2020 WL 1308376, at *5 (D.D.C. Mar. 19, 2020); *see Vulupala*, 2020 WL 601887, at *3–6 (concluding that doctrine of consular nonreviewability did not apply to review of application in "administrative processing"); *Afghan & Iraqi Allies Under Serious Threat Because of Their Faithful Serv. to the U.S. v. Pompeo*, 18-cv-01388 (TSC), 2019 WL 367841, at *10 (D.D.C. Jan.

9

30, 2019) ("[A]dministrative processing is not a final adjudication but a mandatory intermediate step."); *Nine Iraqi Allies*, 168 F. Supp. 3d at 287 ("[A]ny Plaintiff with an application in 'administrative processing' has not yet received a final decision."); *Mohamed v. Pompeo*, No. 1:19-cv-01345-LJO-SKO, 2019 WL 4734927, at *4 (E.D. Cal. Sept. 27, 2019) ("This Court . . . finds persuasive the reasoning of other Courts that have found the 'administrative processing' designation insufficient to constitute a refusal."); *Alwan v. Risch*, No. 2:18-CV-0073, 2019 WL 1427909, at *4 (S.D. Ohio Mar. 29, 2019) (concluding that no final decision had been made when "applications [were] still entrenched in 'administrative processing'"); *Saleh v. Tillerson*, 293 F. Supp. 3d 419, 431 (S.D.N.Y. 2018) ("[A] visa that is in 'administrative processing' cannot be said to have received final approval."); *see also, e.g.*, *P.K.*, 302 F. Supp. 3d at 11 (citing communication indicating that applications were in "administrative processing" as among evidence that "strongly suggest[ed] that Plaintiffs' visa applications ha[d] not been finally refused"); *Assad v. Holder*, 2:13-00117 (WJM), 2013 WL 5935631, at *4 (D.N.J. Nov. 1, 2013) (determining that "administrative review" language in letter "clearly indicate[d] that the decision on [plaintiff's] visa [was] still pending and not final"); *Schutz v. Secretary, Dep't of State*, No. 6:11-cv-1296-Orl-31DAB, 2012 WL 275521, at *2–3 (M.D. Fla. Jan. 31, 2012) (finding document that reported an application was in "administrative processing," *id.* at *2, as "most reasonably interpreted as a notice that the ultimate decision ha[d] not yet been made," *id.* at *3). The reasoning in these cases is persuasive. "By consigning applicants to 'administrative processing,' the Government endeavor[s] to enjoy the benefits of consular nonreviewability" without actually issuing final decisions. *Nine Iraqi Allies*, 168 F. Supp. 3d at 289. "The Government cannot have it both ways." *Id.*

The allegations in the complaint (taken, at this stage, as true), bolstered and supplemented by the undisputed evidence presented by both parties, establish that no final decision has been made regarding Ms. Zaben's visa application. Although, on June 12, 2014, a consular officer interviewed Ms. Zaben and claimed to "refuse[] [Ms. Zaben's] immigrant visa application under INA §221(g)," Dybdahl Decl. ¶ 4, Ms. Zaben was also told, immediately after her interview, that her case "remained pending based on ongoing 'administrative processing,'" Compl. ¶ 2, contradicting the proposition that her application had been denied, *see, e.g.*, *Nine Iraqi Allies*, 168 F. Supp. 3d at 285 ("Documents that the Government gives to . . . applicants following their consular interviews . . . belie the Government's contention that such 'denials' are final or even any kind of decision at all."). Then, on at least ten occasions over the next six years, Ms. Zaben was told that "administrative processing" of, or "administrative work" on, her application was ongoing, and that she had to continue to wait. *See* Pls.' Ex. B at 1; Pls.' Ex. C at 1; Pls.' Ex. D at 1; Pls.' Ex. E at 1; Pls.' Ex. F at 1; Pls.' Ex. G at 1; Pls.' Ex. H at 1; Pls.' Ex. I at 1; Pls.' Ex. J at 2; Pls.' Ex. R at 1. These facts alone fatally undermine the defendants' claim that final adjudication of Ms. Zaben's application has occurred.

Additional evidence confirms that the June 12, 2014 "refusal" was not a final decision. Ms. Zaben has been asked on multiple occasions to submit additional documents and information so that her application can be processed, *see, e.g.*, Dybdahl Decl. ¶ 4; Defs.' May Extension Request ¶ 3; Pls.' Ex. Q at 1, a sure sign that consideration of her application continues, *see Vulupala*, 2020 WL 601887, at *5 (determining that visa-application decision was not final when State Department continued to request additional information from the applicant); *P.K.*, 302 F. Supp. 3d at 11 (same). Additionally, the DSCEAC website indicates that Ms. Zaben's "visa case is currently undergoing necessary processing," Ex. S at 1, a circumstance found in other cases

that concluded visa applications remained pending, *see Nine Iraqi Allies*, 168 F. Supp. 3d at 283–84 ("[T]he Government's own Case Status Tracker states that Plaintiffs' applications remain[] in 'administrative processing' . . . ."); *Alwan*, 2019 WL 1427909, at *3 ("While they have waited, Plaintiffs have consistently inquired online about the status of their applications, with the status of their applications showing 'administrative processing' . . . .").

Finally, the defendants have conceded, on more than one occasion, that the current administrative processing of Ms. Zaben's application precedes the still-to-come final decision. The Consulate stated, in a November 17, 2016 email, that "[a]dministrative processing refers to various additional steps that must be taken before a visa can be issued," Pls.' Ex. F at 1, and further, the Embassy said, in both a September 20, 2018 email and a November 30, 2018 letter, that it would "do all we can to see that the visa is adjudicated as soon as the processing of [the] application is complete," Pls.' Ex. G at 1; *see* Pls.' Ex. H at 1. *Cf. Nine Iraqi Allies*, 168 F. Supp. 3d at 287 (relying on a similar email to determine that application had not been denied); *see also, e.g.*, *Mohamed*, 2019 WL 4734927, at *4 ("The U.S. Embassy in Djibouti's own communications to the Djibouti Plaintiffs suggest that the United States is continuing to process the Djibouti Plainitff[s'] visa applications."). As was the case when those communications were sent, Ms. Zaben's application currently remains in administrative processing, and thus a final adjudication has not occurred.

The defendants rejoin that "the Department of State's regulations allow for reconsideration after a refusal, if the applicant is able to provide additional evidence," and further maintain that "administrative processing" in this instance refers to reconsideration. Defs.' Reply at 2–3. Courts, however, have roundly rejected this argument. *See, e.g.*, *Nine Iraqi Allies*, 168 F. Supp. 3d at 284 ("'Administrative processing' is not an opportunity for reconsideration of a

decision but is a pre-requisite to reaching the decision itself—a crucial distinction."). Even the defendants acknowledge that under the applicable regulation, "reconsideration" lasts for only a year, *see* Defs.' Reply at 3 (quoting 22 C.F.R. § 42.81(e)), yet Ms. Zaben's application has been in administrative processing for roughly six years. Moreover, the treatment of *Mr.* Zaben's application—which until May 2019, was handled in exactly the same way as Ms. Zaben's—belies the defendants' assertion that Ms. Zaben's application is being "reconsidered" pursuant to 22 C.F.R. § 42.81(e). If, on June 12, 2014, the defendants had truly issued a final denial of Mr. Zaben's application pursuant to § 221(g) of the INA, an additional denial on May 3, 2019 under § 212(a)(3)(B) would have been unnecessary, if not gratuitous.

The defendants further assert that the above-cited cases concerning "administrative processing" are distinguishable because those cases were about either "special immigrant visa applications pursuant to" the Refugee Crisis in Iraq Act of 2007 and the Afghan Allies Protection Act of 2009, Defs.' Reply at 3 (citing *Nine Iraqi Allies*, 168 F. Supp. 3d 268, and *Afghan & Iraqi Allies*, 2019 WL 367841), or "a challenge to the Department of State's application of Executive Order No. 13,780," *id.* at 4 (citing *P.K.*, 302 F. Supp. 3d 1). To the contrary, many of the cases addressing "administrative processing" concerned Form I-130 petitions and "denials" under § 221(g) of the INA following interviews with consular officers, same as here. *See, e.g.*, *Vulupala*, 2020 WL 601887, at *5 n.4 ("[A] section 221(g) refusal is an interim decision."); *Schutz*, 2012 WL 275521, at *3 ("[T]he language accompanying the citation to Section 221(g) in the [notice purporting to deny the application] explicitly informed [the applicant] that processing ha[d] not yet been completed, contradicting any suggestion that the final decision had been made."). Additionally, these cases turned not on formal distinctions of the immigration law invoked by the prospective immigrant but "on what is actually happening," *Vulupala*, 2020 WL

13

601887, at *4, and in that respect, no difference of consequence exists between this case and those the defendants urge the Court to ignore.

Accordingly, review of Ms. Zaben's claims is not barred by the doctrine of consular nonreviewability.[3]

### B. The Plaintiffs Need Not Amend The Complaint

The defendants also argue that the plaintiffs have attempted to "amend their complaint through their opposition papers," Defs.' Reply at 1, and that while the complaint asserts "no decision" has been made on Ms. Zaben's application, the plaintiffs now instead allege "no *final* decision" has been made, a critical distinction, *id.* at 4 (emphasis added) (internal quotation marks omitted). The defendants maintain that without this new allegation in the complaint itself, the plaintiffs' argument against application of consular nonreviewability fails. *See id.* at 1, 4.

The defendants are wrong to believe that the plaintiffs were required to use the magic words "final decision" in the complaint. Under Federal Rule of Civil Procedure 8(a), a complaint need only "give the defendants fair notice of what the claim is and the grounds upon which it rests." *Jones v. Kirchner*, 835 F.3d 74, 79 (D.C. Cir. 2016) (internal quotation marks omitted) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Here, the complaint makes clear that the plaintiffs believe that Ms. Zaben's case is "not resolved because of ongoing 'administrative processing,'" Compl. ¶ 19, which is the same contention that the plaintiffs advance in their opposition memorandum. In fact, the plaintiffs appear to have anticipated the defendants' consular-nonreviewability argument, as the complaint further explains: "The

---

[3] The defendants also maintain that Ms. Zaben's claims are moot, Defs.' Mem. at 3, but their mootness argument and their consular-nonreviewability argument are one and the same, *see id.* at 3–4. Thus, "for the same reason that the doctrine of consular nonreviewability does not apply, the case is not moot." *Schutz*, 2012 WL 275521, at *4; *see also, e.g.*, *Afghan & Iraqi Allies*, 2019 WL 367841, at *8 ("While a final decision, favorable or unfavorable, would render [the plaintiff's] claims moot, her progression through the process while this case has been pending does not." (citation omitted)).

14

Plaintiffs are not asking the Court to review the Consulate's decision to approve or deny a visa request." *Id.* ¶ 23. In short, no meaningful daylight exists between the plaintiffs' complaint and their opposition memorandum. Thus, the latter document was not an impermissible attempt to amend the former, and the complaint needs no amendment to survive the motion to dismiss.

## IV. CONCLUSION

For the foregoing reasons, the defendants' Motion to Dismiss, ECF No. 15, is granted in part and denied in part. The plaintiffs' claims are dismissed as they pertain to Mr. Zaben's visa application, but not as they pertain to Ms. Zaben's.

An Order consistent with this Memorandum Opinion will be filed contemporaneously.

Date: April 8, 2020

_____
BERYL A. HOWELL
Chief Judge